## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| ATLANTIC PACIFIC GROUP, LLC, | : | Case No 13-12207-CGM |
| | : | |
| Debtor. | : | |
| | : | |

## OPPOSITION TO APPLICATION OF ORDER DIRECTING
## PRODUCTION OF DOCUMENTS AND EXAMINATION OF DEBTOR

TO:    Honorable Cecilia J. Morris
       United States Bankruptcy Judge

Atlantic Pacific Group, LLC, by and through its counsel, Ballon Stoll Bader & Nadler,

P.C., hereby opposes and moves for reconsideration of the Order dated June 23, 2014 [ECF 34]

the application for an Order permitting the examination and production of documents from the

Debtor Atlantic Pacific Group, LLC ("APG" or "Debtor") sought by Albea Beauty Solutions

USA, LLC, formerly known as Cosmetech Mably International, LLC ("Albea" or "Applicant")

pursuant to the Notice of Deposition and Application for Order for Discovery.

1.       This opposition was not submitted until now because the Notice of Application

did not have a return date and we were waiting for the Court to set a schedule for submission of

the opposition.  We were not aware, nor did we expect, this Court to consider the Application

prior to setting a return date.  For this we apologize.  We were not aware of Judge Morris's

special rates concerning 2004 examinations.  As can be seen below, the Application is overly

broad and seeks the books and records of non-party entities for the past six years without

showing any basis for such an overreaching request.

2.      Although the Application alleges that it seeks to conduct a deposition and to

obtain documents from the Debtor, those documents were already provided to it.  This

application actually seeks, without showing any good cause or any foundation for, all of the

business records of and depositions of other companies and Martin Terzian, to wit, Pacific

Connections, Inc. ("PCI"), Pacific Worldwide, Inc. ("PWI"), Pacific International Alliancing,

Inc. ("PIA"), Information Process Solutions, LLC ("IPS") and all other companies that Martin

Terzian had any interest in since 2008.  In addition, it seeks those companies' tax returns and the

records concerning their suppliers and customers.  None of these companies nor Mr. Terzian

filed for bankruptcy or are part of the Debtor.  They are separate and distinct entities from the

Debtor, the records are not in the Debtor's custody or control and are not relevant to this

bankruptcy.

3.      **All of the records sought from the Debtor** by Roy Babbitt, the Trustee of the

Debtor's Bankruptcy Estate **have been produced**.  The documents produced include not only the

Debtor's books and records but also the Debtor's tax returns and, at Applicant's request, Mr.

Terzian's personal tax returns.  (Annexed hereto as Exhibit A is a copy of the cover letters for

the 15,197 documents were supplied on November 22, 2013 and December 11, 2013 pursuant to

the Trustee's requests).

4.      This is not Applicant's first unfounded attempt to seek documents not related to

the bankruptcy based purely on unsupported speculation..  By letter dated December 5, 2013

Albea's attorneys made similar unsubstantiated and unfounded allegations to U.S. Bankruptcy

Trustee Babbitt (a copy of the Capeheart Scatchard December 5, 2013 letter is annexed hereto as

Exhibit B).

5.    The Debtor's attorneys responded by letter dated December 18, 2013 stating in

part:

> Mr. Harrison's unsupported assertion that it is highly doubtful that
> APG has no assets and has had no income for two years ignores the fact
> on May 26, 2010, APG made a voluntary surrender of all of its assets to
> First Capital Western Regional, LLC, the factoring company that had a
> secured interest in all of its assets based upon a June 20, 2007 Factoring
> and Inventory Advances and Security Agreement.  (A copy of the
> Voluntary Surrender of Assets is annexed hereto as Exhibit 1.)
> Significantly, the assets were insufficient to repay the factor's loan and a
> substantial debt remained.  Because the obligation was personally
> guaranteed by Martin Terzian, he was responsible for the shortfall and has
> made and continues to make payments on that indebtedness.  (A copy of
> Terzian's Promissory Note is annexed hereto as Exhibit 2.)
>
>                                  *  *  *
>
> The audit that Mr. Harrison refers to was not an "audit" but a
> review of APG and PCI's records by paid representatives of CMI.  The
> results of the review were not shared with APG or PCI until the redacted
> version included as Exhibit F to Mr. Harrison's letter was used as an
> exhibit in the District Court litigation.  The report is merely opinion not
> based upon demonstrable facts.  Further, the redactions raise more
> questions than they answer."

(A copy of the December 18, 2013 response letter is annexed hereto as Exhibit C.)

6.    The books and records produced by the Debtor included all of its transactions, if

any, with the other companies whose books and records are now sought by Applicant.  The

Debtor's records were sent to Albea's attorney, and on February 26, 2014, he requested that the

scheduled Section 341 Meeting before the Bankruptcy Trustee be postponed so that "I will have

sufficient grasp of the materials contained in the two discs."  (A copy of the Capeheart Scatchard

February 26, 2014 letter is annexed hereto as Exhibit D.)

7.    In this application Applicant now alleges that "the Applicant believes that assets

of Debtor **may** have been transferred to PCI, PWI and PIA and that those transfers may be

subject to avoidance under section 548 of the Bankruptcy Code or section 544 of the Bankruptcy

Code in conjunction with relevant state laws on fraudulent transfers." However, despite the fact

that Applicant's attorneys have had over three months to review APG's books and records, **there**

**is not one reference to any document or fact that in any way substantiates this unfounded**

**speculative claim** of alleged transfers that "may be the subject of avoidance." Indeed, although

no such improprieties occurred, Applicant is attempting to use the APG bankruptcy as an

opportunity to improperly obtain the books, records, tax returns and other proprietary

information from companies that are not part of the bankruptcy and have no relevance to the

bankruptcy for its own purposes that are not related to the bankruptcy.

8.      The Debtor's factor, First Capital, had a lien on all of the Debtor's assets pursuant

to a July 20, 2007 Factoring and Inventory Advances and Security Agreement. On May 26,

2010 the Debtor made a voluntary surrender of all of its assets to First Capital. That surrender

left a several million dollar shortfall which, pursuant to his personal guaranty, Martin Terzian has

been and continues to make payments to the factor. (A copy of the surrender agreement and

promissory note are annexed to the December 18, 2013 letter, Exhibit C hereto, as Exhibits 1 and

2.)

9.      All of the Debtor's assets were subject to the lien by and were surrendered to First

Capital, its Factor, an May 26, 2010.

10.     Although there were no improper transfers of the Debtor's property to any of the

companies whose records are sought by the Applicant, even if such transfers were made, the

proceeds would belong to First Capital pursuant to the security interest on all of the Debtor's

assets and the May 26, 2010 voluntary surrender.

11.     The books and records, tax returns and the identities of the customers and

suppliers of PCI, PWI, PIA, IPS, Martin Terzian and **any other company owned in whole or in**

**part by Martin Terzian after January 1, 2008** that are sought by this application are not only

proprietary and not relevant to APG's bankruptcy, but consist of hundreds of thousands of

documents and will require several hundreds of hours of time to locate and produce.  The

unfounded and unsupported attempt to obtain documents and information from independent third

parties will create a very substantial hardship on those other companies in order to provide

Applicant, who, upon information and belief, is in the same business at some of the companies,

records and other proprietary information that is not related or relevant to the Debtor or its

bankruptcy.

12.    Applicant has not referred a single document or corroborating fact from the

Debtor's books and records, which has already produced, to support its requests and instead it

relies upon a report created by its employees after their December, 2008 visit to the Debtor's

offices allegedly to review of the books and records of the Debtor and other companies which

Applicant mischaracterizes as an "audit".  That report is subjective and conjecture not supported

by any of the documentation reviewed.  **Indeed, internal the report prepared by the**

**Applicant which has only been produced in redacted form, does not contain any supporting**

**evidence or reason to warrant the improper requests for all of the records and depositions**

**of independent entities not involved in this bankruptcy**.

13.    The Notice of Deposition is likewise overly broad and improper (Exhibit A to the

Application).  Instead of seeking information relating to the Debtor or its books and records,

which have already been produced, it seeks to elicit testimony from "one or more officers,

directors, or managing agents, or other person or persons most knowledgeable and prepared to

testify no its behalf, who will speak on its behalf on each topic below" to wit:

(a)    "Martin Terzian's **specific motivation(s)/goals in creating** Atlantic

Pacific Group, LLC ("APG") … **PWI … PIA … IPS … and in whole or**

**in part, any other company [created] after November, 2008**."  (Notice

of Deposition items 1 though 5);

(b)    "Martin Terzian's historic **involvement with Chinese and other Asian**

**manufacturers … [and] involvement with other domestic U.S.**

**retailers**." (Notice of Deposition 6 and 7);

(c)    The **relationships** of **PCI**, APG, **PWI, PIA** and **IPS "and Chinese or**

**other Asian manufacturers** with whom Martin Terzian had a historic

relationship."  (Notice of Deposition Number 8);

(d)    The **relationship and identity of all suppliers of those companies since**

**January 1, 2008** (Notice of Deposition 9 through 11);

(e)    "The **causes of financial stress experienced by PCI**, APG, **PWI, PIA**

and **IPS [and any other company created in whole or in part by**

**Martin Terzian after November, 2008] from January 1, 2008 to the**

**present**," including, **but not limited to, debt, lack of cash, lack of**

**credit, credit limits reached or nearly reached, excess/unsold**

**inventory, sale of inventory at or below cost, out of date inventory**, US

Customs issues and the like."  (Notice of Deposition 12 and 13);

(f)    The **identity and products sold to U.S. retailers who purchased**

**products from PCI, PWI, PIA and IPS and other companies** owned in

whole or in part by Terzian since November, 2008.  (Notice of Deposition

14 and 15);

(g)    The **employees and consultants of each of those companies since 2008**
(Notice of Deposition 16);

(h)    The **aggregate debt owned by each of those companies since 2008**
(Notice of Deposition 17);

(i)    The **product lines with description of products of each of the**
**companies** (Notice of Deposition 18);

(j)    "The identity of all locations owned or leased by PCI, APG, PIA, PWI,
IPS and any company owned/created by Martin Terzian after November,
2008 until the present."  (Notice of Deposition 19);

(k)    **General financial histories of each of the companies** including **start-up**
**capitalization histories** and **Federal tax histories of each** of the
companies.  (Notice of Deposition 20 through 22);

(l)    **Full description of assets owned by each of the companies as well as**
**the original source of such assets from date of start-up to the present**.
(Notice of Deposition 23 and 24);

(m)    "A full description of all intercompany sales, transfers, gifts and the like
involving PCI, APG, PIA, PWI, IPS and any other company
created/owned in whole or in part after November, 2008 by Martin
Terzian from January 1, 2008 to the present."  (Notice of Deposition 25);

(n)    **Record keeping and accounting practices of each of the companies**
**from January 1, 2008 to the present**.  (Notice of Deposition 26);

(o)     "Historical personal guarantees provide to secure obligations for any

company owned in whole or in part by Martin Terzian from January,

2008."  (Notice of Deposition 27);

(p)     **History of distributions of any kind to Martin Terzian from any of the**

**companies as well as records of all expenses incurred by Martin**

**Terzian in connection with any of the companies since January 1,**

**2007**.  (Notice of Deposition 29);

(q)     The **history behind retention and utilization of Tony Gasson** to provide

consulting services to each of the companies or Martin Terzian since

January 1, 2007.  (Notice of Deposition 30);

(r)     The **identity of personnel/entries who provided General Ledgers**

**and/or Bank Reconciliations for any of the companies from January**

**1, 2007 to the present** as well as when such documents were created and

to whom distributed.  (Notice of Deposition 31 and 32);

(s)     The instructions or directions provided by Martin Terzian regarding the

December, 2008 review of the records by Applicant's employees.  (Notice

of Deposition 33);

(t)     All documents or transactions referred to in the report prepared by

Applicant's employees following the December 2008 record review (it

must be noted that Applicant misclassifies this as an "audit" and has never

supplied a full copy of its report, making compliance impossible).  (Notice

of Deposition 34);

(u)    "Documents or transactions following the December 2008 audit of a

similar character to those described in" Applicant's report.  (Notice of

Deposition 35);

(v)    "**Other topics, on notice to Debtor, which are identified in reviewing**

**of documents listed in Exhibit 'B'** [document request] concurrently

herewith, Exhibit 'A'."  (Notice of Deposition 36).

14.    The topics sought to be covered in the depositions would be unduly burdensome

even if it related solely to the Debtor.  However, Applicant is seeking unwarranted, outrageously

overbroad, and irrelevant documents and information from other independent companies without

any factual support or basis for the requests.

15.    The Notice of Deposition and Production Request clearly show that after

reviewing the more than 15,000 documents produced by the Debtor and not finding any

impropriety or basis to proceed against the Debtor, the Applicant is nevertheless seeking to

obtain proprietary, irrelevant and unrelated documents and information from other companies

owned by Martin Terzian, in whole or in part, in furtherance of its harassment of any company in

which Mr. Terzian had or has an interest and cause them to incur unnecessary costs and legal

expenses.

16.    It is respectfully submitted that the Application is seeking information that is

beyond what is permitted by Sections 105(a) of the Bankruptcy Code, Rule 2004 of the

Bankruptcy Rules of Procedure and Chamber Rules for 2004 Orders and the Application should

be denied in all respects.

WHEREFORE, it is respectfully requested that the Application for an Order authorizing

Albea to conduct an examination of the Debtor and other entities on the subject matter specified

in the Notice of Deposition and requiring the production of documents from entities other than the Debtor, as requested in the Application for Discovery, be denied in all respects and that the Court grant Debtor such other and further relief as may be just and proper.

Dated: New York, New York
      July 1, 2014

                        Respectfully submitted,

                        BALLON STOLL BADER & NADLER, P.C.

                        By: _____
                        Michael H. Du Boff (MD 1902)
                        Dwight E. Yellen (DY 6547)
                        *Attorneys for Atlantic-Pacific Group, LLC,*
                        *Judgment Debtor*
                        729 Seventh Avenue, 17th Floor
                        (212) 575-7900
                        mduboff@ballonstoll.com
                        dyellen@ballonstoll.com